is United States v. Cade, docket 19-3220. Mr. Pincus, please proceed when you're ready. Thank you, Your Honor. May it please the Court. My name is Howard Pincus from the Federal Public Defender. I represent Kenneth Cade. Numerous police officers gathered one night at the home of Mr. Cade's mother, Janet Case, tried to kick in the door, order her out of Mr. Cade and his girlfriend at gunpoint and without a warrant. By all accounts, as the videotape shows, Ms. Case was traumatized by this. Her statements a short time later at the police station were made under the influence of this unlawful conduct and were involuntary. District Court therefore erred in not suppressing these statements, and this court should reverse and remand to allow Mr. Cade, if he chooses, to withdraw his conditional guilty plea. Mr. Cade had a due process right not to have his mother's involuntary statements used against him. There was no dispute that the police conduct at the house, which the District Court held was unlawful, had a powerful effect on Ms. Case. Officers variously described her after she was ordered out of the house as being pretty hysterical, somewhat hysterical, yelling and screaming, and very upset. And the videotape confirms this. When Ms. Case was ordered out of the house, she kept asking more insistently what was going on and was frantic about our two young granddaughters who were in the house. She soon began sobbing and moaning and was still sobbing and moaning more than nine minutes later after the police had arrested her son and his girlfriend and she had been brought back to the front porch. The police were concerned enough about chest pain that she was experiencing that they offered to call emergency medical services. And Ms. Case began crying again just moments before the police started questioning her. After the police questioned her for several minutes about who lived there, who lived at the house, who stayed there, and other biographical data, they asked if she would go to the station with them. Within 40 minutes, she was sitting in an interrogation room at police headquarters and about 10 minutes later she was questioned and gave incriminating statements about Mr. Cade. Let me ask you there, when you say that she was still under the influence of the trauma from what happened at the house, isn't that a fact question and didn't the district court rule on that fact question contrary to your argument, to your position? It is a fact question but the district court didn't rule on it. The district court did say she wasn't coerced but the district court focused on whether she was asked to go to the police station and what happened from that point forward. It didn't consider all of the stuff that happened at the house and that was the misconduct that led to the statements being involuntary. It didn't talk about whether she was still under the influence of that traumatic and illegal police conduct. The district court essentially started its analysis at the much later point when she was asked to go to the police station and that's incomplete. What we have to focus on is the police misconduct here. We're not claiming that what happened at the police station in its own just standing alone would be coercive. What was coercive is what happened at the house. The police coming to Ms. Case's house with trying to kick in the door ordering her out of her own house. That's clearly illegal conduct. It was illegal as a district court found as to Mr. Cade and his co-defendant Ms. Cole and it was surely illegal conduct as to Ms. Case whose house it was. So that was what the trauma was. Are you essentially asking for a per se rule that if a third party is traumatized by illegal conduct that even if they're calm minutes later, an hour later, we view the interview and she appears to be very calm, the detective appears to be very gentle with her, that because there was that earlier trauma that every single time the person is under the influence of the trauma and therefore the statement, it's not a confession, the statement is involuntary. No, it's not a per se rule. You have to look at what effect that this had on her. Isn't the best evidence of that watching the video of the interview? You mean at the police station? Yes. No, just because she manifested it in a very obvious state at the house doesn't mean that she wasn't still under the influence of that trauma at the police station. There's no, this was only 40 minutes after she left the house, there was no break in the chain of events and I think one important way we can see that she was still under the influence of it is not just that this would be the obvious conclusion to draw that somebody who was that traumatized at the house would still be suffering from that trauma later, even if she wasn't manifesting it in the same way, but I think another fact we can look at is she was experiencing chest pain at the house when she went to the police station. Officer Ronan testified at page 225 of she felt so debilitated at the station that she asked for a wheelchair and in fact they used a wheelchair to take her out of the police station. So I think that confirms what we see, what we would ordinarily conclude would be that the trauma would continue even if she wasn't manifesting it in as obvious a way as she was at the house. Given how clearly traumatizing, everybody agrees on this and the videotape shows it very clearly. Given how traumatized she was at the house, this is not something that was likely to dissipate by the time she's at the police station a short time later with no break in the chain of events. Council, let me stop you for a second. What would your position be if the officers had a warrant for the son and his girlfriend and went over and served it and arrested them at her house and for safety ordered her out and she became hysterical at the at the idea that her son and his girlfriend were going to be taken away and they went ahead and loaded her up and she remained hysterical the whole time and told them all these things. What would your position be then? Well there has to be some police overreaching or misconduct that leads to her being in that state. If, as I understand your question, there's no police misconduct in that situation and therefore there's no overreaching, as this court said in Morris, whether intentional or unintentional, that led to her emotional state and that's the distinction between a case like this and the government relies on Collard versus Connolly. The fact that somebody may have a particular mental state that compels them to confess isn't, there's not the necessary state action to call for its suppression under the due process clause, but here we have police misconduct and it's the police misconduct that is what induces her traumatic state and it's that state that critically impairs her ability for self-determination and overbears her will and prompts her to give statements against her son. What about the idea that the coercion or misconduct would need to be directed at her as opposed to a third party? Well, it was directed both at her and at a third party. She is sitting in her house. She's ordered out of her house. The police are not drawing a distinction between who has to come out of the house. She has a fourth amendment right to remain free in her house from that kind of conduct and they're ordering her out of the house. She didn't have to come out. I mean she could have just not come out. Well, they say police come out. She opens the door. She keeps saying what is this? What's going on? They several times, I think two, three, four times order her to keep saying come out of the house, come out of the house. Nobody is disputing that she is ordered out of her house. The house, there's five, six officers you can see on the videotape. The one at the house, the district court said there were 10 officers amassed at the house. They have guns. They use the guns to order Mr. Cade and Ms. Cole out of the house. But she has a right to be protected in the security of her own home and she's ordered out of her own house. I don't think there can be any real question that there is illegal conduct as to her every bit as much as there is to Mr. Cade and Ms. Cole. And because her will was overborne and her capacity for self determination was critically impaired, her statements were involuntary. There's a necessary causal connection that is required in this area of the law and the district court should have suppressed her statements. What in your mind could have changed? What could the police have done different that would have resulted in her not being coerced in your mind? Well, the district court gave a number of examples of what the police could have done. They claim they were needed to storm the house and try to kick down the door and order people out because of exigent circumstances and officer safety. District court rejected both of those claims. I'm with you on that. I mean, once they have her out of the house, is it your opinion that once she gets to the police station, she appears calm. At some point, there has to be an ability for a down and she was speaking freely. I mean, how far down the road do we have to go before the police are free to talk to her? I think certainly there has to be some break in the chain and some appreciable amount of time and here there was neither. Here, as soon as the interview at the house stopped, they asked her to come down to the interrogation room. Given how obvious her distress was and how serious the trauma was to her, you would need substantially more than what we have here. They could have arranged for her to come down the next day. They could have done lots of things. They didn't have to take her immediately, even if she didn't object, to the police station and basically exploit the emotional state that they themselves had caused at the house by their illegal conduct. There just was not any kind of break or any kind of significant distance between the traumatic events at the house and what happened at the police station and given how distraught she obviously was at the house, that's the kind of distress that would normally continue to the wheelchair and the fact they wheeled her out at the end confirms that. So we, the district court, erred in refusing to suppress Ms. Case's statements because they were involuntary. This court should reverse and remand to allow Mr. Cade, if he chooses, to withdraw his plea of guilty, his conditional plea of guilty, the remedy called for by Federal Rule of Criminal Procedure 11A2. Thank you. Mr. Brown. Good morning, Your Honor. James Brown appears for the United States. Your Honor, we believe this appeal can be resolved on the basis that the district court made a factual finding that there was no coercive police activity and this factual finding was not clearly in making that finding. The court applied correctly the factors in the Schneckloth case and looked at the factors specific to the defendant, looked to the environmental factors and made a factual finding that there was no coercive police activity. That's at page, Record Volume 1, pages 77 and 78. The defendant has the burden of proving improper coercion. In this case, the government does not have that burden. The defendant did not present this particular factual hypothesis to the district court, that factual hypothesis being that Ms. Case had a specific mental state and was suffering under trauma that resulted from police conduct that rendered her confession involuntary to the district court. He thereby failed to carry his burden to improper coercion with the district court and now asks this court to make a factual finding that he did not ask the district court to make. But that is of no moment here because there is a factual finding that is not clearly erroneous that there was no coercive police activity and that her confession was therefore voluntary. We think it's notable and this court has alluded to the fact that the videotape supports the district court's view. The videotape at the station house shows that this encounter was non-accusatory, polite, non-confrontational, that she was calm and composed for all but about 30 seconds to one minute of that 18-minute interview and that from all appearances, from all visible appearances, there was no police overreaching, there was no coercive police activity, and the videotape supports the district court's factual finding, which is not clearly erroneous, that there was no coercive police activity. This court should resolve this appeal on that basis. We think it's also worth pointing out that the defendant's factual hypothesis, again that being that she had a specific mental state at the time of her interview, i.e. she was suffering from trauma that resulted from police misconduct, is not a fact of record. That is a factual hypothesis that the defendant presents for the first time on appeal and that is not a fact of record. There's an absent factual premise for this whole argument. In the last 15 minutes, the defendant made lots and lots of arguments based on psychology, based on police misconduct, based on certain facts, extrapolated from the fact that Ms. Case asked for a wheelchair, that she was suffering from trauma, but he didn't present any of these arguments to the district court. He wants this court to be the fact finder and we do not think that the district court's non-clearly erroneous factual finding that there was no coercive police activity is challengeable on that basis. I really don't have much more to say about this case because it seems to us an easily affirmable case based on the district court's factual finding, which the defendant hasn't even contested. And he does not contest and does not say that that factual finding was not clearly erroneous and it was not. It was a permissible view of the evidence. Now, even if the defendant's view of the evidence which he did not substantiate with the district court or present any evidence on with the district court is a permissible view of the evidence, that still does not mean the district court's view is clearly erroneous because where there are two permissible views of the evidence, the district court's selection of one cannot be clear error. So even if the defendant's argument has some merit, which we do not think it does, it still would not make the district court's finding clearly erroneous and the district court's decision is affirmable on that basis. I don't have much more to offer by way of argument, but if the court has any questions, I'd be happy to take any questions. It would appear not. Thank you, Mr. Brown. And Mr. Pincus, I believe, has a couple of minutes left in rebuttal. Thank you, Your Honor. There was no fact finding on the critical issue. The district court's fact finding was about coercion, but it was based on what happened from the point at which Ms. Case was asked to go to the police station. It omits all of what happened before, so it's not a relevant fact finding. The videotape that shows her trauma, the fact that she asked for a wheelchair, which is in the record, of course, those both confirm that she was still operating under that trauma and this court can draw that inference. And to the extent that it's a lack of fact finding by the district court on that and this court is not persuaded that's the only view of the evidence, the proper remedy wouldn't be to affirm, it would be to remand for the district court to make that fact finding that it failed to make the relevant fact finding that it didn't actually make because its finding of coercion was based starting on the middle of the movie forward without all that preceded it. And Mr. Cade certainly argued about the trauma, about all of the police misconduct at the scene in the district court. So we would ask this court to reverse the judgment. Is there any reason that we would think the district court didn't consider the very facts that you're talking about? Whether announced in the order or not, the district court considered them? I think it had a mistaken view of coercion and that's reflected in what its order says. I think that the best indication of what the district court did is what it wrote in its order and that was looking at the coercion from the point at which the police asked her to go to the police station and that doesn't take account of what's really critical and the police misconduct in this case, which is what happened in ordering her out of the house. Thank you. Thank you both for your very helpful arguments. The case is submitted.